**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Shannon Kissell, | |
| Plaintiff, | No. 3:17-CV-02203 |
| v. | (Judge Richard P. Conaboy) |
| Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

**MEMORANDUM**

**I.   Procedural Background.**

We consider here Plaintiff Shannon Kissell's appeal from an adverse decision of the Social Security Administration ("SSA" or "Agency") on her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] This case is before the Court after the Appeals Council vacated an ALJ decision dated May 30, 2014 and remanded the matter to the ALJ for further consideration of the Plaintiff's residual function capacity and clarification of the method used to evaluate the

---

[1] The current appeal relates to applications filed on November 19, 2012 that alleged a disability onset date of February 25, 2010. Previous decisions of the SSA on prior applications by Plaintiff had resulted in a final decision that denied benefits effective May 10, 2010. (R. at 10). The ALJ found that the prior decision had res judicata effect and Plaintiff does not challenge that finding. Thus, this claim can succeed only if Plaintiff demonstrates disability in the period from May 11, 2012 through December 31, 2013 (Plaintiff's last insured date). (R. at 13).

medical evidence. (R. 247-48). On remand the ALJ conducted two additional hearings and issued another opinion (R. 7-31) dated October 4, 2016 that once again denied benefits. The Appeals Council subsequently affirmed the ALJ's decision of October 4, 2016 and Plaintiff appeals. Because the Appeals Council's decision dated October 4, 2017 constitutes a final decision by the SSA, this Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405g.

**II. Testimony before the ALJ.**

    **A. Hearing of April 21, 2016.**

The hearing was conducted by ALJ Michelle Wolfe. The Plaintiff testified along with Sean Hanahue, a Vocational Expert ("VE"). Plaintiff's attorney Charles Rosamilia, Jr. was also present.

Plaintiff stated that she resides in Renovo, Pennsylvania and that she was born on September 13, 1979. She testified that she became disabled on February 25, 2010. She is a high school graduate who is a certified emergency medical technician. (R. 102-03).

The VE testified that he had examined Plaintiff's work history over the preceding fifteen years. That work consisted of employment as a nurse's aide/caregiver from 1999 to some unspecified date in 2008. The VE characterized this work as "medium exertional level, semi-skilled" but noted that

Plaintiff's particular work environment was at "very heavy exertional level". (R. at 103-04).

The ALJ proffered a hypothetical question in which the VE was asked to assume an individual the same age as Plaintiff with the same educational background and work history. He was asked to further assume that the hypothetical individual had the residual functional capacity to perform light work with additional limitations including: only occasional balancing, stooping, crawling, crouching, kneeling, and climbing; avoidance of ropes, ladders, and scaffolds; only occasional pushing and pulling with the lower extremities; avoidance of exposure to temperature extremes, wetness and humidity, vibrations, fumes, odors, dust, gases, and poor ventilation; no exposure to unprotected heights or moving machinery; and only simple routine tasks performed in a low stress environment with only occasional decision making and occasional changes in the work setting. Based on these assumptions, the VE testified the hypothetical individual would be incapable of performing Plaintiff's past relevant work. (R. 104-06). However, the VE did state that the hypothetical individual could perform other jobs (such as "night cleaner housekeeping", "garment sorter", and "cashier") that exist in significant numbers in the national economy. (R. at 105-06). When additional limitations of only occasional pushing with the right arm and only occasional interaction with the

public were added to the hypothetical question, the VE stated that the cashier position would be eliminated but the cleaner/housekeeper and garment sorter jobs could still be performed. (R. at 107).

Upon questioning by Plaintiff's attorney, the VE stated that an additional limitation such that Plaintiff would be incapable of performing 80% of the duties of the jobs previously identified by the VE would render the Plaintiff unemployable at any exertional level. (R. 110-111).

**B. Hearing of August 15, 2016.**

The hearing of August 15, 2016 was conducted to permit Plaintiff to testify regarding her then current status in respect of her alternative claim for SSI benefits. Plaintiff testified that she had been diagnosed with depression and bipolar disorder and that the latter had produced an anger management problem. She stated further that she takes Lithium, Ativan, and Vistaril to control her anger. These medications make her tired. She also experiences panic attacks when she is around other people. These attacks result in an accelerated heart rate and the inability to think straight. She is not receiving treatment for her emotional problems other than the medications she identified. (R. 118-119).

Plaintiff does go to the Haven Medical Group once each month for pain management. She stated that she is taking fifteen

different medications in connection with her treatment by the Haven Medical Group for her pain and for breathing difficulty. These medications also make her tired. Her right hand is in a brace and she indicated that no further treatment is available for that hand. (R. 119-120).

Plaintiff also stated that since 2014 her home activities have decreased. She no longer washes dishes, does laundry, or goes upstairs due to pain in her knee, back, and wrist. She barely uses a computer but has no problem reading or watching television. She is not exercising or doing any form of therapy. She can walk one-half of a block before pain in her lower back and knee make it necessary to stop and take a break. She has no difficulty sitting. (R. at 120-122).

Plaintiff also testified that her wrist problems are in her right wrist and that she is right hand dominant. She stated that she cannot move or lift her right hand due to pain that she rates as level 8 on a 10 point scale. This pain has caused her to drop such objects as plates and bowls. (R. 122-123). Plaintiff also indicated that she has been diagnosed with Von Willebrand's Disorder, a condition which impedes her blood from clotting and makes her prone to infections. Even a paper cut can take weeks to heal. (R. at 124).

Upon questioning by Gerald Keating, a VE, Plaintiff testified that one of her previous jobs was as a caregiver at

the Colburn Psychiatric Institute. Her job there involved working with juveniles who were autistic or beset by other behavior problems. Plaintiff's duties included "de-escalating" students who had violent episodes. She was trained in the application of therapeutic physical restraints. She also cooked in the establishment and at times trained students to cook. (R. 126-128). Once the VE had heard Plaintiff's testimony regarding her prior work at Colburn Psychiatric Institute, he opined, as had VE Hanahue at the previous hearing, that, based upon the previously described hypothetical question from the hearing of April 21, 2016, Plaintiff could not perform any of her past relevant work. However, VE Keating stated that Plaintiff would be capable of performing such jobs as "assembler of small products", "pricer", and "stock checker". (R. at 125-132).

When the ALJ added an additional hypothetical limitation such that Plaintiff would be incapable of more than occasional fine and gross manipulation with the right hand, the VE stated that none of the jobs he had identified would be within Plaintiff's capacity. (R, 133-135).

**III. The ALJ's Decision.**

The ALJ's decision was adverse to the claimant. It included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
2. The claimant has not engaged in substantial gainful activity since February 25, 2010, the alleged onset date.
3. The claimant has the following severe impairments: bipolar disorder, post-traumatic stress disorder, panic disorder, degenerative disc disease lumbar, degenerative disease of the knees, obesity, asthma, wrist sprain/hand sprain, and history of treatment for right DeQuervain Syndrome.
4. The claimant does not have an impairment or combination of imparments that meets or medically equals the severity of one of the listed impairments in the code of federal regulations.
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant can do occasional balancing, stooping, crouching, crawling, kneeling and climbing but never on ladders,

ropes, or scaffolds. The claimant can do occasional pushing and pulling with the lower extremities. She can occasionally push and pull with the right upper extremity. She can do frequent fingering and feeling for five minute duration and frequent grasping for gross manipulation. She must avoid concentrated exposure to temperature extremes of cold/heat, wetness, humidity, vibrations, fumes, odors, dusts, gases, poor ventilation and hazards including moving machinery and unprotected heights. The claimant can do simple routine tasks, but no complex tasks in a low stress work environment defined as occasional decision-making and occasional changes in work setting. She can have occasional interaction with the public, co-workers and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on September 13, 1979 and was thirty years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2010 through the date of this decision.

**IV.  Disability Determination Process.**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

*(footnote continued on next page)*

the Commissioner to ascertan: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age,

---

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (Doc. 12-2 at 25).

**V.    Standard of Review.**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla". It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed

> by other evidence--particularly certain
> types of evidence (e.g., that offered by
> treating physicians)--or if it really
> constitutes not evidence but mere
> conclusion. *See Cotter*, 642 F.2d at 706
> ("Substantial evidence" can only be
> considered as supporting evidence in
> relationship to all the other evidence in
> the record.") (footnote omitted). The
> search for substantial evidence is thus a
> qualitative exercise without which our
> review of social security disability cases
> ceases to be merely deferential and becomes
> instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."

*Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the

decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VI. Discussion**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra

care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff makes two assignments of error which she alleges require remand in this case or an award of benefits. We shall consider these assignments of error in the order presented by Plaintiff in her brief.

1. **Whether the ALJ's decision of October 4, 2016 complied with the remand instructions of the Appeals Council?**

At the outset, it is apparent the Appeals Council agreed that the ALJ had adequately complied with its remand order else it would not have issued its October 4, 2017 denial of Plaintiff's request for review of the ALJ's decision. (R. at 2-6). Indeed, the Appeals Council's Notice of Action expressly states that it considered Plaintiff's rationale for remand and concluded "that the reasons do not provide a basis for changing the Administrative Law Judge's decision." (R. at 2). Moreover, and more importantly, the question whether the ALJ fully complied with the remand order is irrelevant here.

As the Government points out in its brief, Section 405(g) of the Social Security Act limits judicial review to a particular type of agency action, a "final decision of the Secretary made after a hearing." *Califano v. Sanders,* 430 U.S. 99,108 (1977)(cited in the Government's brief at 6). Numerous courts in our circuit have relied upon this principle to hold that district courts lack the authority to consider whether an ALJ complied with a remand order of the Appeals Council. See, e.g., *Ford v. Colvin,* 2015 WL 4608136 (D.Del. July 31, 2015); *Pearson v. Colvin,* 2015 WL 9581749 (D.N.J. December 30, 2015); *Scott v. Astrue,* 2007 WL 1725252 (E.D.Pa. June 12, 2007). "The appropriate focus for review is upon the ALJ's final decision, not the prior Appeals Council remand order." *Pearson, supra at *4.*

Plaintiff cites no legal authority to contradict the preceding authorities in her brief. Accordingly, we must reject Plaintiff's assignment of error regarding the ALJ's alleged failure to comply with the Appeals Council's remand order of December 21, 2015.

**2. Whether the ALJ's determination that Plaintiff's Von Willebrand's Disorder is not a severe impairment is unsupported by substantial evidence?**

Plaintiff's attorney engaged in a dialogue with the VE at Plaintiff's second hearing (that of August 15, 2016) concerning

Plaintiff's diagnosis of Von Willebrand's Disorder. (R. at 135-137).[3] During the exchange with the VE, Plaintiff's counsel was told that the Dictionary of Occupational Titles afforded no guidance on the ability of a person with Von Willebrand's Disorder to perform in the workplace. The VE also stated that if he was presented with a hypothetical question that expressed limitations in "operational terms" he could possibly express an opinion as to the availability of work for a person with Von Willebrand's Disorder. The Plaintiff's counsel (and not the ALJ) proposed a limitation such that the Plaintiff could not be in any work environment where she might sustain so much as a paper cut. Based upon that limitation, the VE stated that no such work environment exists and work would be unavailable to such a person.

The VE's response to the hypothetical limitation proposed by Plaintiff's counsel was neither based on anything that the ALJ had put forth nor was it represented by anything that appears in the record. Nevertheless, Plaintiff appears to argue that the VE's response, in combination with other unspecified portions of the record that document a supposed worsening of Plaintiff's condition

---

[3] Von Willebrand's Disorder is a "lifelong bleeding disorder in which your blood does not clot well. … Most people with this condition inherit it from a parent. …Von Willebrand's Disorder cannot be cured. But with good treatment and self-care, most people with this disease can lead active lives." www.mayoclinic.org/diseases/vonwillebrand-disease.

over the years, should have resulted in a finding that the Plaintiff's Von Willebrand's Disorder is a "severe impairment" which should, in turn, have required the ALJ to further restrict Plaintiff's residual functional capacity. The Court does not agree. The ALJ provided this rationale:

> In regard to the claimant's Von Willebrand's Disorder, the representative questioned the vocational expert in what appeared to elicit a response that due to this condition she would never be able to even work in a job where she could get a paper cut. The claimant, however, has had this impairment since birth and worked at the substantial gainful activity level at a medium job with this condition. Therefore, the undersigned does not find this disorder would be severe, and even if so, the limitation on hazards given for the other severe impairments would be a reasonable accommodation for this impairment.

(Record at 13). The Court finds that the ALJ's reasoning for declining to find Plaintiff's Von Willebrand's Disorder to be a "severe impairment" is reasonable and supported by substantial evidence. Importantly, the record reflects that Plaintiff worked as a nurse's aide/caregiver between 1999 and 2008. (R. at 125-129). This job, which required that she assist in transferring

patients and occasionally helping to restrain violent patients certainly posed a far greater danger of being cut than the light duty jobs with numerous additional limitations which the ALJ found Plaintiff can perform. This fact, coupled with the Plaintiff's failure to point to anything specific in the record documenting a deterioration in Plaintiff's Von Willebrand's Disorder, is enough to provide reasonable support for the ALJ's RFC determination in this case.

The fact that a claimant has been diagnosed with a condition does not establish an entitlement to benefits. As the Government asserts: "Mere presence of a disease or impairment is not enough. The claimant must also show that his disease or impairment caused dysfunctional limitations that precluded him from engaging in any substantial activity." *Walker v. Barnhart,* 172 F. App'x 423, 426 (3d Cir. 2006)*(citing Alexander v. Shalala,* 927 F. Supp. 785, 792 (D.N.J. 1995); affirmed 85 F.3d 611 (3d Cir. 1996). The Plaintiff has pointed to nothing in the record that establishes any specific functional limitations stemming from her Von Willebrand's Disorder. Accordingly, plaintiff's argument that a remand is necessary to revisit the ALJ's RFC determination in this case must be rejected.

**VII. Conclusion.**

For the reasons discussed above, the Court finds that the Agency's final decision is supported by the requisite

substantial evidence. Thus, the SSA's decision in this case will be affirmed. An Order consistent with this determination will be filed contemporaneously.

                                      **BY THE COURT,**

                                      <u>S/Richard P. Conaboy</u>
                                      **Richard P. Conaboy**
                                      **United States District Judge**

**Dated: September 4, 2018**